hAMY, Judge.
The plaintiffs filed suit seeking damages related to the death of their husband and father, following a work-related accident in which the decedent became trapped beneath rice draining from a grain trailer. The plaintiffs asserted that the trailer manufacturer was negligent in failing to label the trailer, warning users of suffocation hazards associated with its use. The trial court granted the defendant’s motion for involuntary dismissal. The plaintiffs appeal. For the following reasons, we affirm.
Factual and Procedural Background
This products liability action arose due to a work-related accident suffered by Lenis LaSalle. At the time of the July 30, 1997 accident, Mr. LaSalle was employed by Herpin Trucking, Inc., a farming and trucking business of which Mr. Craig Her-pin was the president and chief executive officer. According to Mr. Herpin, he had employed Mr. LaSalle to perform odd jobs during the four-to-five weeks prior to the accident, but that he had only recently hired Mr. LaSalle as a truck driver for his business. In fact, Mr. Herpin stated that he was still training Mr. LaSalle as a driver.
The accident at issue occurred during the rice harvest and, according to Mr. Herpin, he and Mr. LaSalle had been occupied with the harvest for approximately seven days prior to the accident. During these workdays, Mr. Herpin’s grain trailer *1175 would be filled with rice and driven to his father’s rice dryer and grain storage facility. The trailer, which contained both a front and a back hopper for the rice, would then be unloaded. This was done by opening a door at the bottom of each hopper. The rice would fall from the truck and through a grate, where an elevator would transport it into the grain bin. Mr. Her-pin testified that it took approximately fifteen to eighteen minutes to unload each of the hoppers and that, usually, they were able to complete two loads from the field to the storage facility each day.
li>On the day of the accident, Mr. Herpin drove the loaded truck from the field and was accompanied by Mr. LaSalle. According to Mr. Herpin, the two stepped from the truck and he proceeded to the switch to activate the elevator. Mr. LaSalle opened the hatch to the front hopper. The hopper took approximately fifteen to eighteen minutes to unload and then Mr. La-Salle, Mr. Herpin’s son, and his nephew entered the hopper to remove rice that remained in the corners. He stated this took approximately five minutes. Mr. Herpin then moved the truck so that the rear hopper was over the grate. He stated that, at this time, his nephew was on the middle partition of the trailer and his son was on the rear of the trailer. Mr. Herpin did not see Mr. LaSalle and believed that he was still in the front hopper. The hatch to the rear hopper was then opened. He explained that his son began trying to get his attention and was instructing him to turn off the elevator. Mr. Herpin stated that his son told him that Mr. LaSalle had fallen in the rice. He turned off the elevator, climbed on top of the trailer, and began attempting to remove Mr. LaSalle. However, Mr. LaSalle was covered in rice, was not breathing, and had no pulse when he was extracted some eight minutes later. Emergency personnel responded. Mr. Herpin sustained brain damage related to the loss of oxygen and eventually died in April 1998.
Rachel LaSalle, Mr. LaSalle’s wife, filed suit on her own behalf and on behalf of the couple’s minor children asserting a survival action and seeking damages for wrongful death. The petition named Wilson Trailer Co., Inc. and its insurance provider as defendants. The plaintiffs asserted that the trailer company manufactured lathe trailer in which Mr. LaSalle sustained injury and that it negligently failed to warn of the dangers of being in the trailer at the time it is unloaded and of suffocation.[1]
A bench trial was held on the matter in April 2000. At the close of the plaintiffs’ case, the defendant moved for an involuntary dismissal.[2] It argued at that time that a user walking across the middle of the trailer during the unloading process, as it was argued Mr. LaSalle was doing, was not a reasonably anticipated use of the trailer and, therefore, no warning was required. The trial court granted the invol *1176 untary dismissal concluding that Mr. Her-pin had actual knowledge of the danger of being on top of a load of grain during the unloading process and that Mr. LaSalle should have known of this danger. Applying the products liability statute to this finding, the trial court concluded that no duty to warn was owed.
The plaintiffs appeal, assigning the following as error in its brief to this court:
(1) The analysis of the Trial Judge was legally flawed under the provisions of R.S. 9:2800.54 and R.S. 9:2800.57 in that the actions of the user, even if arguably below standard, would constitute victim fault relevant only as comparative negligence and not a bar to recovery.
(2) The Court erroneously found, as a fact, that Lenis LaSalle should have known of the danger that confronted him (even though the Court conceded he obviously actually did not know of the danger),' and consequently, he was not entitled to a warning against the danger. This finding is manifestly wrong and totally unsupported by the record.
|4(3) The trailer was being used as anticipated by its manufacturer contrary to the belief by the Trial Court that it may have been misused.
Discussion
Although several assignments of error are designated, the plaintiffs essentially argue in brief that the trial court erred in determining that the “drowning” hazard posed by the grain trailer was open and obvious. The plaintiffs contend that although this drowning risk had been known in the agricultural community for some time, the facts do not support a finding that Mr. LaSalle “should have known” of the danger of walking into the loaded trailer and risking suffocation in the rice. The plaintiffs point to Mr. LaSalle’s brief experience in the rice field and some of Mr. Herpiris statements regarding whether he, himself, knew of the risk. According to their safety expert who testified at trial, a warning or labeling was required since the risk could not be removed. Further, the plaintiffs contend that the trial court’s focus on whether Mr. LaSalle should have known of the risk was an “unrelated issue” and that the trial court should have focused on whether the trailer was being misused, ie., the question of anticipated use.
The Louisiana Products Liability Act, La.R.S. 9:2800.51, et seq., provides the framework for the liability of manufacturers for the damage caused by their products. La.R.S. 9:2800.54(A) provides that “[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.” Relevant in this case is the statute’s additional provision that “[t]he product is | ..¡unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57[.]” La.R.S. 9:2800.54(B)(3).
“Adequate warning” is addressed by La. R.S. 9:2800.57, which reads:
A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer’s control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
*1177 B. A manufacturer is not required to provide an adequate warning about his product when:
(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product’s characteristic; or
(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
The trial court’s ruling reflects a finding that the plaintiffs’ case fails under the statute due to the “should have known” language of La.R.S. 9:2800.57(B)(2). The court explained, in part:
In this case, it appears to the Court that Mr. Herpin certainly had actual knowledge of the danger. And I know that [the plaintiffs’ attorney] has made the argument that Mr. Herpin did not appreciate the danger. But the Court just does not believe that someone who’s been in the farming business for 18 years, who readily admitted that he understood the danger of suffocation involved with grain and readily admitted that he understood that, if someone stood in the middle of the trailer when the latch was opened, that they would go immediately to the bottom — the Court does not believe that he did not appreciate the danger.
He further testified that he would not have opened the unloading door had he known that Mr. LaSalle was on top of the grain — the rice storage. To me, the evidence clearly establishes that Mr. Herpin was aware of the danger involved in this case.
UThe second question is whether Mr. LaSalle ... should have known. Because, obviously, he didn’t have actual knowledge — or, if he did have actual knowledge, then what Mr. LaSalle did would have really been unbelievable.
So the Court ... feels that Mr. La-Salle didn’t have actual knowledge of the danger of what he was doing in getting on top of the rice when the door was opened. But the question for the Court is not whether they had actual knowledge but whether he should have known of the danger even if he didn’t have actual knowledge.
And the Court believes that Mr. La-Salle should, in fact, have known of the danger. The testimony in this case was to the effect that Mr. LaSalle had been on the job for at least five days, during which time at least two loads had been made. The testimony was also to the effect that Mr. LaSalle himself opened the door on the load that was unloaded immediately prior to this. So he obviously witnessed the force with which the grain came from the trailer.
Again, it is unexplained to the Court as to why Mr. LaSalle would have been on top of this load of rice knowing that Mr. Herpin was in the process of opening the door.
And I believe that Mr. LaSalle was fully aware of that because of the fact that Mr. Herpin testified that, after Mr. LaSalle and the boys swept out the empty front trailer, he moved the trailer forward — he yelled to them, told them he was moving the trailer forward, and did, in fact, move the trailer forward.
Mr. LaSalle, having been on the job, knew that this was the procedure that was going to be used prior to opening of the hatch to release the grain. So there’s no question that there was knowledge that the door was about to be opened.
*1178 Mr. LaSalle, having been on the job and knowing the mechanism by which this grain is released from the trailer, should have known of the danger of being on top of that rice at the time that the door was opened.
And, therefore, the Court feels that the manufacturer in this case had no duty to warn under this situation, because, under the provisions of 9:2800.57, there is no duty to warn if the user should have known of the danger.
And, in this case, taking the totality of the evidence into consideration, the Court feels that the user should have known of the danger in this case and that ... there was, therefore, no duty on behalf 17of the manufacturer to place a warning on this trailer under the factual situation that has been presented to the Court. And so the Court will grant the defendant’s motion for a directed verdict [3] in this matter.
As explained in Courville v. City of Lake Charles, 98-73 (La.App. 3 Cir. 10/28/98); 720 So.2d 789, a trial court considering a motion for involuntary dismissal must evaluate all evidence without any special inferences in favor of the nonmov-ing party and determine whether the non-moving party has failed to establish proof by a preponderance of the evidence. If the motion for involuntary dismissal is granted, it is not to be reversed by an appellate court absent manifest error. Id.
As seen in the reasons for ruling, the trial court concluded that Mr. LaSalle should have known of the hazard of walking across the loaded trailer while the hatch to the hopper was open. Thus, according to La.R.S. 9:2800.57(B)(2), Wilson Trailer was not required to provide an “adequate warning.” Our review of the record reveals no manifest error in the trial court’s determination that the plaintiffs’ evidence was insufficient for recovery in this regard. As pointed out in the ruling of the trial court, Mr. LaSalle was familiar with the unloading of the rice, even if only for a week or so. During that period, he had assisted Mr. Herpin and was involved in unloading two trailers per day. The trial court is not precluded from finding that he was familiar with, or should have been aware of, the way in which the product flowed from the truck and the dangers related to walking across the load as it was released from the hopper. In fact, the evidence demonstrates that even Mr. Herpin’s young son and his nephew, who were also atop the load, stayed to the side of the trailer, whether on the ^partition between the hoppers or on the back. Neither was said to have been in the middle. Although the plaintiffs contend that Mr. Herpin was, himself, unaware of the risk posed, the following exchange between counsel for the defendant and Mr. Herpin is found in the record:
Q. And you had a couple of loads a day that y’all would do?
A. Yes, sir.
Q. So he would exit out of hoppers, I guess, what, four times, six times a day?
A. Four times a day.
Q. Times five days or seven days?
A. Right.
Q. And, each time he did so, you’d see him use the ladders rather than doing anything across the loaded rice; is that right?
A. Yes, sir.
*1179 Q. If you had ever seen him, sir, walk across a loaded bed of rice, what would you have done?
A. I’d have told him not to walk on the middle.
Q. And why is that?
A. Well, not to get caught in with the rice coming down.
Q. Is there a difference — You said that your nephew and your son were sitting on the side of the hopper, sir, or on the side — on the grain on the side. Is there a difference, in terms of calling anything to your attention, between sitting on the side as opposed to being in the middle of the loaded grain bin?
A. Yes, sir.
Q. What is that difference, in terms of possible danger?
A. Well, if you’re in the middle, you’re going to go down with the rice. Whereas the edges go down last....
| flCertainly this testimony is relevant to and supportive of the trial court’s determination that this risk was an open and obvious risk or one of which Mr. LaSalle should have known. This, alone, precludes recovery according to La.R.S. 9:2800.57(B)(2). However, this testimony may also be important to the question preferred by the plaintiffs, that is whether Mr. LaSalle’s conduct was a “reasonably anticipated use” of the trailer as is described in La.R.S. 9:2800.54. The plaintiffs contend that it was. However, Mr. Her-pin’s testimony indicates that Mr. La-Salle’s apparent action of placing himself in the middle of the open trailer was one that was unacceptable, one that he would have felt the need to correct, and one that carried a very real risk. There was no compelling evidence countering this type of statement to indicate that Mr. LaSalle’s action was one that was anticipated.
The trial court’s determination that this type of testimony indicated that the risk associated with walking across the loaded trailer as it was being emptied is, of course, a factual determination. So too are any credibility determinations associated with the trial court’s ruling. We find no manifest error in the determinations made by the trial court or in the application of these facts to the relevant legal authority.
DECREE
For the foregoing reasons, the decision of the trial court is affirmed. All costs of this proceeding are assigned to the plaintiff, Rachel LaSalle, individually and on behalf of her minor children.
AFFIRMED.
COOKS, J., dissents for the reasons assigned by Judge SAUNDERS.
SAUNDERS, J., dissents and assigns written reasons.

. The petition also alleged that the trailer was unreasonably dangerous in construction and composition. At trial, however, only the claim of failure to adequately warn was argued.

. As is relevant to this matter, La.Code Civ.P. art. 1672 provides for an involuntary dismissal as follows:
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

. Although áíe trial court refers to the motion as one fort a directed verdict, the defendant clearly moved for involuntary dismissal and the judgment granting the motion reflects that it is one granting an involuntary dismissal. Accordingly, our review reflects consideration of the standards applicable for an involuntary dismissal.